# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| SANDRA HERNANDEZ DE GUTIERREZ & HEBERTH GUTIERREZ, | Civil No. 19-2495 (JRT-KMM) |
| Plaintiffs, | |
| v. | |
| WILLIAM P. BARR, *United States Attorney General*; KEVIN McALEENAN, *Acting Secretary, Department of Homeland Security*; KENNETH CUCCINELLI, *Acting Director, U.S. Citizenship and Immigration Services*; DONALD NEUFELD, *Associate Director, Service Center Operations, U.S. Citizenship and Immigration Services*; ROBERT COWAN, *Director, National Benefits Center, U.S. Citizenship and Immigration Services*; LESLIE TRITTEN, *Director, St. Paul Field Office, U.S. Citizenship and Immigration Services*; U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF HOMELAND SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Brittany S. Bakken, David L. Wilson, and Kelsey Friberg, **WILSON LAW GROUP**, 3019 Minnehaha Avenue, Suite 200, Minneapolis, MN 55406, for plaintiffs.

P. Angel Martinez, **DEPARTMENT OF JUSTICE, CIVIL DIVISION**, Office of Immigration Litigation, District C, P.O. Box 868, Ben Franklin Station, Washington, DC 20044, for defendants.

This case presents the novel question of whether the Temporary Protected Status ("TPS") statute, 8 U.S.C. § 1254a, allows a person who initially entered the country without inspection but was later granted TPS to adjust their status to lawful permanent resident pursuant to 8 U.S.C. 1255.  Because the plain language of the statute makes clear that (1) a grant of TPS qualifies as an "admission" and (2) such an admission qualifies as a new entry, the Court will answer the question in the affirmative.  Accordingly, the Court will grant Plaintiffs' Motion for Summary Judgment and deny Defendants' Motion for Summary Judgment.  Additionally, the Court will grant Defendants' Motion to Dismiss Plaintiffs' declaratory judgment claim because it is redundant of Plaintiffs' APA claim.

## BACKGROUND

### I.      UNDISPUTED FACTS

The relevant facts are not in dispute and are summarized briefly here.  Plaintiffs Sandra Hernandez de Gutierrez and Heberth Gutierrez are a married couple and citizens of El Salvador.  (Compl. ¶¶ 1, 4, 7, Sept. 11, 2019, Docket No. 1.)  In 1990, Plaintiffs entered the United States without inspection.  (*Id.* ¶¶ 45, 68.)   In 2001, th Attorney General designated El Salvador for the TPS program under 8 U.S.C. § 1254a(b) after the country experienced a significant earthquake.  *See* Designation of El Salvador Under Temporary Protected Status Program, 66 Fed. Reg. 14,214 (March 9, 2001).

In 2003, Plaintiffs applied for and, after a rigorous review by Defendants, were granted TPS under § 1254a(c).  (Compl. ¶¶ 51–52, 68.)  Since that time, Plaintiffs have consistently renewed their TPS as required, and Plaintiff Hernandez de Gutierrez was paroled into the United States in 2011 following a brief foreign trip.  (*Id.* ¶¶ 52–53, 68.)

In 2004, Plaintiff Hernandez de Gutierrez's mother, a U.S. citizen, filed a Petition for Alien Relative (I-130) visa listing Plaintiff Hernandez de Gutierrez as the primary beneficiary and Plaintiff Gutierrez as a secondary beneficiary.  (*Id.* ¶ 54.)  United States Citizenship and Immigration Services ("USCIS") approved the I-130 petition in 2004, but a visa number did not become available until June 2016.  (*Id.* ¶ 55.)

In late 2016, based on the approved I-130 petition and the availability of a visa, Plaintiffs submitted applications to USCIS to adjust their immigration statuses from TPS to lawful permanent residents under § 1255.  (*Id.* ¶¶ 54, 56, 70.)

In December 2017, USCIS denied Plaintiff Gutierrez's application for two reasons: first, USCIS stated that Mr. Gutierrez was not "admitted" because a grant of TPS did not qualify as an admission as required under § 1255(a); and second, even if a grant of TPS was an admission, Mr. Gutierrez was still ineligible to adjust his status pursuant to § 1255(c)(2)'s requirement to "continuously maintain lawful status" since his entry into the United States.  (*Id.* Ex. C.)  USCIS came to this conclusion by measuring Plaintiff Gutierrez's entry from 1990, not from his grant of TPS in 2003.  (*Id.*)  The Administrative Appeals

Office ("AAO") affirmed the USCIS decision.  (*Id.* Ex. D); *Matter of H-H-G-*, 27 I. & N. Dec. 617 (AAO 2019).

In January 2018, USCIS also denied Plaintiff Hernandez de Gutierrez's adjustment application, finding that her parole in 2011 satisfied the threshold requirements of § 1255(a), but that she likewise failed to meet § 1255(c)(2)'s requirement based on her 1990 entry without inspection.  (Compl. Ex. A.)  The AAO affirmed.  (*Id.* Ex. B.); *Matter of S-E-H-D-G*, No. 1314528, 2019 WL 4597055 (AAO Aug. 27, 2019).

On September 11, 2019, Plaintiffs filed this action seeking review of the AAO decision under the Administrative Procedure Act ("APA") and a declaratory judgment that TPS approval granted Plaintiffs lawful status as nonimmigrants for all purposes of a status adjustment under § 1255.  (Compl. ¶¶ 88–100.)

On November 18, 2019, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on Plaintiffs' declaratory judgment claim, arguing it is redundant of their APA claim, and for Summary Judgment pursuant to Fed. R. Civ. P. 56 on Plaintiffs' APA claim.  (Docket No. 7.)

On January 6, 2020, Plaintiffs filed a cross Motion for Summary Judgment on the APA claim.  (Docket No. 17.)

## DISCUSSION

## I.      MOTION FOR SUMMARY JUDGMENT

**A.  Standard of Review**

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The parties agree that there are no facts in dispute and that the only question is a legal one: whether Plaintiffs are eligible for adjustment of status to lawful permanent residents.  Specifically, the parties dispute whether TPS qualifies as an "admission" for § 1255 purposes and whether plaintiffs are statutorily ineligible for a status change pursuant to § 1255(c)(2)'s requirement to continuously maintain lawful status post-entry.

The APA authorizes judicial review of an agency's interpretation of a statute to determine whether the interpretation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

To this end, the Court must engage in a two-step analysis pursuant to *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  At the first step, the Court must determine "whether Congress has directly spoken to the precise question at issue."  *Id.* at 842.  If the statute's language is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43.[1]

---

[1] *See also Friends of Boundary Waters Wilderness v. Dombeck*, 164 F.3d 1115, 1121 (8th Cir. 1999) ("When reviewing an agency's construction of a statute, the court first considers whether the intent of Congress is clear; if so, the court's inquiry is over[.]").

If the statute is "genuinely ambiguous" the Court must proceed to the second step and determine whether the agency's interpretation "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. That is, if the statute is ambiguous, the agency's interpretation of the statute will govern if it is reasonable. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). A statute will only be ambiguous if, after "exhaust[ing] all the 'traditional tools' of construction," including examining "the text, structure, history, and purpose," of the statute, the Court finds that the statute is still open to more than one reasonable interpretation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (discussing deference as it relates to an agency's interpretation of a regulation but noting *Chevron* "adopt[ed] the same approach for ambiguous statutes"). An agency's interpretation will only be deemed reasonable if it falls within the "zone of ambiguity" identified by the Court using all the tools of statutory construction. *Id.* at 2416.

## B. Statutory Scheme

### 1. Temporary Protected Status under 8 U.S.C. § 1254a

TPS is a form of humanitarian relief that the Secretary of Homeland Security may grant to foreign nationals present in the United States. *See* 8 U.S.C. §§ 1254a(a)(1)(A), (b)(1). TPS protects such persons from removal while dangerous conditions persist in their home country. *See id.* § 1254a(a)(1)(A).

To be eligible for TPS, a person must show that (1) they are a national of a state designated for TPS; (2) have been continuously physically present in the U.S. since the effective date of the most recent designation; (3) have continuously resided in the U.S. since a date that the Attorney General designates; (4) are "admissible as an immigrant"; and (5) have not been convicted of certain crimes. *See id*. §§ 1254a(c)(1)(A)(i)-(iii), 1254a(c)(2)(B).

TPS confers certain benefits on recipients, including that "[d]uring a period in which an alien is granted [TPS] . . . for purposes of adjustment of status under [8 U.S.C. § 1255 to lawful permanent resident] and change of status under [8 U.S.C. § 1258] of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4).

**2.   Adjustment of Status of Nonimmigrant to Lawful Permanent Resident Status Under 8 U.S.C. § 1255**

Section 1255 of Title 8 of the United States Code  is entitled "[a]djustment of status of nonimmigrant to that of person admitted for permanent residence."  *Id.* § 1255. Section 1255(a) provides that an adjustment of status to "lawful permanent resident" is available to "an alien who was inspected and admitted or paroled into the United States" if: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence,

and (3) an immigrant visa is immediately available to him at the time his application is filed." *Id.* § 1255(a).

A person who satisfies § 1255(a)'s requirements may nonetheless be barred from adjusting their status by § 1255(c)(2), which renders ineligible for adjustment certain persons who "ha[ve] failed . . . to maintain continuously a lawful status since entry into the United States." *Id.* § 1255(c)(2).

**C. Analysis**

The parties dispute whether (1) a grant of TPS qualifies as an "admission" for adjustment of status purposes under § 1255(a), and (2) if so, whether Plaintiffs are nonetheless barred from an adjustment of status under § 1255(c). Each issue is discussed below.

**1.  Whether a Grant of TPS Qualifies as an "Admission" for § 1255(a) Purposes**

USCIS and the AAO (collectively, the "Agency") denied Mr. Gutierrez's application for a status change in part because they found that a grant of TPS does not qualify as an admission as required per § 1255(a).[2]

---

[2] The Court recognizes that the issue of whether TPS qualifies as an "admission" is presently before the Eighth Circuit.  *See Leymis V. v Whitaker*, 355 F. Supp. 3d 779 (D. Minn. 2018), *appeal docketed,* No. 19-1148 (8th Cir. Jan. 22, 2019); *Melgar v. Barr*, 379 F. Supp. 3d 783 (D. Minn. 2019), *appeal docketed*, No. 19-2130 (8th Cir. June 3, 2019).  If the Eighth Circuit's decision is materially
*(footnote continued on next page)*

Section 1101(a)(13)(A) defines the terms "admitted" and "admission" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). That said, the immigration statutes do not limit "admission" to only port-of-entry inspections. As the Eighth Circuit recognized in *Roberts v. Holder*, "[§] 1255(b) treats *adjustment itself* as an 'admission.'" 745 F.3d 928, 933 (8th Cir. 2014) (emphasis in original).

Similarly here, § 1254a(f)(4) of the TPS statute unambiguously treats the conferral of TPS as an admission for § 1255 purposes. Section 1254a(f) details the "[b]enefits and status during [the] period of temporary protected status" and states that "for purposes of adjustment of status under [§ 1255] . . . , the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant." 8 U.S.C. § 1254a(f)(4). A person "who has obtained lawful status as a nonimmigrant has necessarily been 'admitted.'" *Ramirez v. Brown*, 852 F.3d 954, 960 (9th Cir. 2017). As the Ninth Circuit persuasively explained,

> The statutory provisions refer to "[t]he *admission* to the United States of any alien as a *nonimmigrant*," though the duration and purpose of the alien's stay may be tightly circumscribed. Indeed, every alien "shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status." In other words, by the very nature of obtaining lawful nonimmigrant status, the alien goes through inspection and is deemed "admitted."

---

different from the Court's here, Defendants may follow the normal course of action and file an appeal or motion to reconsider.

*Id.* (citations omitted) (emphasis in original).

Accordingly, the Court finds at step one of *Chevron* "that § 1254a(f)(4) unambiguously treats aliens with TPS as being 'admitted' for purposes of adjusting status." *Id.* at 958.[3] Because the statute is clear, the Agency's determination to the contrary is arbitrary and capacious and cannot stand.

### 2.  Section 1255(c)(2)

The Agency also denied both Plaintiffs' applications for adjustment of status based on the Agency's interpretation of § 1255(c)(2), stating that because Plaintiffs initially entered without inspection in 1990, Plaintiffs are statutorily barred from an adjustment of status pursuant to § 1255(c)(2)'s mandate that the lawful permanent resident applicant "maintain continuously a lawful status since entry into the United States."  8 U.S.C. § 1255(c)(2).

When read in context with the immigration statutes as a whole, however, § 1255(c)(2) unambiguously does not bar Plaintiffs from adjusting their status because an "admission" acts as a fresh "lawful entry."  *See* 8 U.S.C. §1101(a)(13)(A) (noting that an

---

[3] The rigorous review process that a person must go through before TPS is conferred also supports this conclusion. *See Ramirez*, 852 F.3d at 960 (noting the "rigorous process" for securing TPS is "comparable to any other admission process" and that this "further confirms that an alien approved for TPS has been 'admitted'").

"admission" is "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."). Thus, because Plaintiffs were admitted by way of the conferral of TPS in 2003, they lawfully entered the United States at that time according to the plain text of the immigration statutes.[4] It is undisputed that Plaintiffs have maintained continuous lawful status since being granted TPS. Accordingly, the court finds that, based on the plain language of the immigration statutes, § 1255(c) does not bar Plaintiffs' adjustment of status.

The Court is not persuaded by Defendants' reliance on the interpretation of § 1254a(f) by the Fifth and Eleventh Circuits. Those circuits concluded that the lawful status described in § 1254(a)(f)(4) is limited to the period of time the recipient has TPS and any earlier unlawful status still constitutes a failure to "maintain continuously a lawful status since entry" under § 1255(c)(2). *See Melendez v. McAleenan*, 928 F.3d 425, 429 (5th Cir. 2019) (noting § 1255(c)(2) barred a Plaintiff from an adjustment of status when plaintiff overstayed his visa) *cert. denied*, 140 S. Ct. 561 (2019); *Duron v. Stul*, 724 Fed. App'x 791,

---

[4] Defendants' argue that 8 C.F.R. § 245.1(d)(3) shows that the requirement of § 1255(c) to maintain lawful status "since entry" means since the individual's first entry. But that regulation only applies to certain individuals that have physically departed and then attempted to reenter. *See* 8 C.F.R. § 245.1(d)(3) (titled "Effect of Departure"). Here, Plaintiffs were admitted by way of TPS. Moreover, this argument shows the disingenuous nature of Defendants' position, who argued during the hearing that the proper way for Plaintiffs to alter their status was by leaving the country and then applying for a status change. The Court has no doubt that despite Defendants' present overtures implying the contrary, if Plaintiffs were to do as Defendants say, Defendants would continue to argue that Plaintiffs' prior entry without inspection bars such a change.

794 (11th Cir. 2018) ("[T]he lawful-status benefit for TPS grantees set forth in § 1254a(f)(4)

applies only to the time period in which" a person has TPS).

The plain language of § 1254(a)(f)(4), however, shows that no such limitation

exists.  Section 1254a(f)(4) lists the "benefits and status" conferred on a TPS recipient

"[d]uring a period in which an alien is granted temporary protected status," and

unequivocally states that "for purposes of adjustment of status under section 1255 . . .

the alien shall be considered as being in, and maintaining, lawful status as a

nonimmigrant."  § 1254a(f)(4).  Thus, the statute's plain text makes clear that one of the

benefits of attaining and maintaining TPS is that the individual will be considered to be in

lawful status for all of § 1255's purposes, including § 1255(c)(2)'s requirement to

"maintain continuously a lawful status since entry."[5]  If Congress intended TPS recipients

who initially entered without inspection to be unable to alter their status under § 1255,

---

[5] In a prior case, Defendants argued that § 1254a(f)(4)'s benefit indeed applied only to § 1255(c). *See Flores v. U.S. Citizenship & Immigration Servs.*, 718 F.3d 548, 553 (6th Cir. 2013) ("The Government argues that . . . the language in § 1254a(f) only exempts [TPS beneficiaries] from the work authorization issue in § 1255(c)(2).").  The Sixth Circuit rejected this argument and found that § 1254a(f)(4) applied to the entirety of § 1255 by its plain text.  The fact that Defendants now argue that § 1254a(f) covers only the amount of time in which a person is granted TPS, but no time before, borders on absurd.  The Government is "essentially telling [Plaintiffs] that [they are] protected and can stay here, but that [they] will never be allowed to become [Legal Permanent Residents], even for an independent basis."  *Id.* at 555.  This interpretation only evidences a "general policy of opposition for the sake of opposition" on this issue.  *Id.* at 556.

it would not have made § 1254a(f)(4) to operate as an "admission" and would not have made it applicable to the entirety of § 1255.[6]

In sum, the Court finds at step one of *Chevron*, based on the clear statutory text, that § 1255(c)(2) does not bar Plaintiffs from adjusting their status because they were admitted by way of conferral of TPS and such admission operates as a fresh entry. Because it is undisputed that Plaintiffs have maintained continuous lawful status since that entry, the Agency's decision barring Plaintiffs' adjustment of status based on § 1255(c)(2) was arbitrary and capricious.

### D. Conclusion

The plain language of the statute makes clear that (1) a conferral of TPS is an "admission" for § 1255(a) purposes and (2) such an admission operates as a fresh entry. Accordingly, Plaintiffs were properly admitted and are not barred from an adjustment of status under § 1255(c)(2), and the Court will find that the Agency's decision otherwise was arbitrary and capricious.  As such, the Court will grant Plaintiffs' Motion for Summary Judgment on Count I and deny Defendants' Motion for Summary Judgment.

---

[6] Policy considerations also support this interpretation.  Similar to *Flores*, Plaintiffs are exactly the type of people that Congress appears to have wanted to allow an adjustment of status from TPS to legal permanent resident.  They have lived in the United States for thirty years, attended school here, have jobs here, have family here who are U.S. citizens, and have been deemed to be of good moral character by Defendants.  See *Flores*, 718 F.3d at 555.  Plaintiffs have also waited their turn for "an independent, legal, and legitimate pathway to citizenship, through the immediate relative visa application." *Id.*

## II.    RULE 12(B)(6) MOTION TO DISMISS

Defendants also seek dismissal under Fed. R. Civ. P. 12(b)(6) of Plaintiffs' claim for declaratory judgment, arguing that it is redundant of the APA claim because it seeks the same relief. *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant declaratory judgment claim is not a proper declaratory judgment claim and should be dismissed.").

The Court agrees. Plaintiffs' Complaint states only that it is seeking a declaration related to Plaintiffs' APA claims, which the Court has resolved in Plaintiffs' favor. Accordingly, this Court will grant Defendants' Motion to Dismiss Count II.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Plaintiffs' Motion for Summary Judgment [Docket No. 17] on Count I is **GRANTED**;

2.    Defendants' Motion for to Dismiss and for Summary Judgment [Docket No. 7] is **GRANTED in part and DENIED in part** as follows;

    **a.** Defendants' Motion for Summary Judgment on Count I is **DENIED**;

    **b.** Defendants' Motion to Dismiss on Count II is **GRANTED.**

DATED:  September 28, 2020
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court